***Appeal No. 2023-1602***

# United States Court of Appeals for the Federal Circuit

**UNITED WATER CONSERVATION DISTRICT**,

*Plaintiff-Appellant*

v.

**UNITED STATES**,

*Defendant-Appellee*

Appeal from the United States District Court for the District of Federal Claims, Case No. 1:22-cv-00542-CFL, Senior Judge Charles F. Lettow.

**CORRECTED**

**BRIEF OF *AMICUS CURIAE* WESTERN GROWERS ASSOCIATION, CALIFORNIA COTTON GINNERS AND GROWERS ASSOCIATION, WESTERN TREE NUT ASSOCIATION, CALIFORNIA FARM BUREAU FEDERATION, CALIFORNIA AVOCADO COMMISSION, CALIFORNIA FRESH FRUIT ASSOCIATION, CALIFORNIA SEED ASSOCIATION, CALIFORNIA CHERRY GROWERS AND INDUSTRY ASSOCIATION, AND CALIFORNIA PEAR GROWERS ASSOCIATION IN SUPPORT OF PLAINTIFF-APPELLANT'S COMBINED PETITION FOR PANEL REHEARING AND REHEARING *EN BANC*, AND REVERSAL**

*Counsel listed on inside cover*

Mary C. Loum
*Principal Counsel*
BROWNSTEIN HYATT FARBER SCHRECK, LLP
1415 L Street, Suite 800
Sacramento, CA 95814
Telephone: 916.594.9700
Facsimile: 916.594.9701
Email: mloum@bhfs.com

Scott S. Slater
BROWNSTEIN HYATT FARBER SCHRECK, LLP
1021 Anacapa Street, 2nd Floor
Santa Barbara, CA 93101-2711
Telephone: 805.963.7000
Facsimile: 805.965.4333
Email: sslater@bhfs.com

*Counsel for Amicus Curiae Western Growers Association, California Cotton Ginners and Growers Association, Western Tree Nut Association, California Farm Bureau Federation, California Avocado Commission, California Fresh Fruit Association, California Seed Association, California Cherry Growers and Industry Association, and California Pear Growers Association*

# CERTIFICATE OF INTEREST

Pursuant to Federal Circuit Rules 29(a) and 47.4, counsel for *amici curiae* certifies to the following:

1. **Represented Entities.** Fed. Cir. R. 47.4(a)(1). Provide the full names of all entities represented by undersigned counsel in this case.

Western Growers Association;

The California Cotton Ginners and Growers Association;

The Western Tree Nut Association;

The California Farm Bureau Federation;

The California Avocado Commission;

The California Fresh Fruit Association;

The California Seed Association;

The California Cherry Growers and Industry Association; and

The California Pear Growers Association.

2. **Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.

None.

3. **Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.

None.

4. **Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

None.

5. **Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

No.

6. **Organizational Victims and Bankruptcy Cases.** Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

None.

I certify the foregoing information is accurate and complete to the best of my knowledge.

Dated: July 7, 2025

BROWNSTEIN HYATT FARBER SCHRECK, LLP

By: ______________________________

Mary C. Loum
1415 L Street, Suite 800
Sacramento, CA 95814
Telephone: 916.594.9700
Email: mloum@bhfs.com

Scott S. Slater
1021 Anacapa Street, 2nd Floor
Santa Barbara, CA 93101-2711
Telephone: 805.963.7000
Email: sslater@bhfs.com

*Attorneys for Amici Curiae*

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ........................................................................ 3

TABLE OF AUTHORITIES ........................................................................ 7

STATEMENT OF INTEREST ........................................................................ 9

INTRODUCTION ........................................................................ 12

ARGUMENT ........................................................................ 14

I. THE PANEL OPINION MISSTATES CALIFORNIA WATER LAW RELATED TO VESTING OF APPROPRIATIVE WATER RIGHTS. ..... 14

II. THE PANEL OPINION CONFLICTS WITH PRECEDENT FROM THE SUPREME COURT AND FEDERAL CIRCUIT DISCUSSING PHYSICAL TAKINGS OF WATER RIGHTS. ........................................ 17

CONCLUSION ........................................................................ 20

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT ................ 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arizona v. California*,
283 U.S. 423 (1931)........................................................................15

*Boise Cascade Corp. v. U.S.*,
296 F.3d 1339 (Fed. Cir. 2002) ........................................................19

*California Water Curtailment Cases*,
83 Cal.App.5th 164 (2022) ...............................................................14

*Casitas Mun. Water Dist. v. U.S.*,
543 F.3d 1276 (Fed.Cir. 2008) ...........................................17, 18, 19

*Casitas Mun. Water Dist. v. U.S.*,
708 F.3d 1340 (Fed. Cir. 2013) ........................................................14

*Cedar Point Nursery v. Hassid*,
594 U.S. 139 (2021)..........................................................................14

*City of Barstow v. Mojave Water Agency*,
23 Cal.4th 1224 (2000) .....................................................................12

*County of Boulder v. Boulder & Weld Cty. Ditch Co.*,
367 P.3d 1179 (Colo. 2016)..............................................................16

*Dugan v. Rank*,
372 U.S. 609 (1963)..........................................................................18

*Eaton v. State Water Rights Bd.*,
171 Cal.App.2d 409 (1959) ..............................................................15

*Hage v. U.S.*,
51 Fed. Cl. 570 (2002).......................................................................16

*International Paper Co. v. United States*,
282 U.S. 399 (1931)....................................................................17, 18

*National Audubon Soc'y v. Superior Court*,
33 Cal.3d 419 (1983) ........................................................................12

*Seiber v. U.S.*,
364 F.3d 1356 (Fed. Cir. 2004) ........................................................................19

*Thayer v. Cal. Dev. Co.*,
164 Cal.117 (1912) ........................................................................................14

*U.S. v. Gerlach Live Stock Co.*,
339 U.S. 725 (1950)........................................................................................18

*U.S. v. State Water Res. Control Bd.*,
182 Cal.App.3d 82 (1986) ........................................................................14, 15

*United Water Conservation District v. United States*,
133 F.4th 1050 (Fed. Cir. 2025) ...................................................................*passim*

*Washoe Co., Nev. v. U.S.*,
319 F.3d 1320 (Fed. Cir. 2003) ........................................................................19

**Statutes**

Cal. Wat. Code
§ 102...........................................................................................................14
§ 1241.........................................................................................................15
§ 1610.........................................................................................................15
§ 1627.........................................................................................................15

## STATEMENT OF INTEREST

*Amici curiae* represent various organizations involved in agriculture enterprises throughout California and other Western States.

Founded in 1926, Western Growers Association (WGA) is a non-profit organization representing local and family farmers in Arizona, California, Colorado, and New Mexico. Its members grow roughly half the fresh produce in the United States and represent 90% of the growers, shippers and packers of fresh produce, fruit and nuts in California and Arizona. Of WGA's 3,000 members, 2,200 are Californians. WGA has a long-standing practice of advocating on matters generally affecting its members.

The California Cotton Ginners and Growers Association (CCGGA) is a voluntary dues trade association representing cotton gins and cotton growers throughout the state of California on regulatory and legislative issues. While membership is voluntary, CCGGA currently represents 100% of the cotton gins and cotton growers in the state, which includes 15 operating cotton gins and approximately 300 cotton growers .

The Western Tree Nut Association (WTNA) is a voluntary dues trade association representing more than 200 tree nut growers, hullers and processors of almonds, pecans, pistachios and walnuts throughout California on regulatory and legislative issues.

The California Farm Bureau Federation was founded in 1919 and is an innovative, service-based organization, representing approximately 26,000 members throughout the state and is dedicated to being the foremost advocate, protecting the future and quality of life for all California farmers and ranchers.

The California Avocado Commission is established in state law and authorized to represent California's 3,000 avocado growers. California produces 90% of the total U.S. avocado production and 100% of domestic Hass production, with an average annual farmgate value of more than $400 million. The Commission advocates on industry issues and serves as the official information source for the California avocado industry.

Established in 1936, the California Fresh Fruit Association (CFFA) is a voluntary public policy association that represents growers, packers, and shippers of California table grape, blueberry, kiwi, pomegranate and deciduous tree fruit communities. CFFA serves as a public policy representative for its members on issues at both the state and federal levels.

The California Seed Association (CSA) is a voluntary dues trade association representing all aspects of the seed industry in California. CSA currently represents 120 seed developers, suppliers, producers, distributors, and dealers.

The California Cherry Growers and Industry Association is a voluntary dues trade association representing cherry growers and cherry processing entities in California, with over 250 members.

The California Pear Growers Association (CPG) is a voluntary dues trade association representing 85% percent of the pear growing industry in California.

Water rights in the arid west, under which available water supplies are apportioned among competing uses, is of critical importance to *amici* and their members. Water is a primary resource for farming operations. Members count on reliable water supply for the successful operation of their farming enterprises.

*Amici* have authorized the undersigned to file this brief and the accompanying motion. This brief and the accompanying motion were not authored in whole or in part by any party's counsel. No party or party's counsel other than *amici* or their counsel contributed financially to the preparation or submission of this brief or the accompanying motion. No person—other than the *amicus curiae*, its members, or its counsel—contributed money that was intended to fund preparing or submitting this brief or the accompanying motion.

## INTRODUCTION

As recognized by the Presidential Executive Order 14181 issued on January 24, 2025, and a companion memorandum to the Secretaries of Interior and Commerce entitled "*Putting People Over Fish: Stopping Radical Environmentalism to Provide Water to Southern California,*" the impact of government interference with the availability of water is of profound national concern. *United Water Conservation District v. United States*, 133 F.4th 1050 (Fed. Cir. 2025) (hereafter *United*), involves a situation the Executive Order aimed to correct. The government expropriated 49,850 acre-feet from United Water Conservation District ("United")—enough water to supply 400,000 people for a year—for flow through a fish ladder. Unless corrected, the opinion will enable regulatory entities to commandeer water for environmental purposes in utter disregard for the state property rights systems that govern the apportionment of water.

Under common law and statutory schemes, priority is the central principle for allocating water among competing uses. *City of Barstow v. Mojave Water Agency*, 23 Cal.4th 1224, 1243 (2000). Priority is expressed as a usufructuary property right, which "consists not so much of the fluid itself as the advantage of its use." *National Audubon Soc'y v. Superior Court,* 33 Cal.3d 419, 441 (1983). The panel opinion categorically misstates California water law by finding that

despite possessing a previously vested appropriative water right from a state licensing process, an entity needed to have physically diverted water at the time it was expropriated by the government for its property right to vest. *See United*, 133 F.4th at 1057-1058. Under this reasoning, it is impossible to state a takings case for any bypass flow requirement despite it denying a water user the advantage of its priority of use.

The opinion confuses the requirement to divert water as prerequisite to establishing an appropriative right with a requirement to divert water before asserting harm due to the government's denial of a vested usufructuary priority. While water must be diverted and put to beneficial use to vest an appropriative right in the first instance, there is no requirement under California law to "re-vest" the right. Once vested through initial diversion and beneficial use, the right to use the water exists regardless of whether that water remains in-river or has been diverted.

Under a corrected understanding of California law, a previously vested appropriative water right need not be actually diverted and recalled by the government to establish a physical taking claim under the Fifth Amendment. A government requirement to leave water in-river effectively deprives an appropriative-rights holder of their priority and the associated water that could be lawfully diverted, constituting a physical taking. The panel's failure to recognize

this conflicts with Supreme Court and circuit precedent, warranting correction by this Court.

## ARGUMENT

### I. THE PANEL OPINION MISSTATES CALIFORNIA WATER LAW RELATED TO VESTING OF APPROPRIATIVE WATER RIGHTS.

As recognized by the panel, "California property rights are governed by state law." *United*, 133 F.4th at 1056 (citing *Cedar Point Nursery v. Hassid*, 594 U.S. 139 (2021)). "Appropriative water rights (such as those at issue here) have long been recognized by California courts as private property subject to ownership and disposition." *Casitas Mun. Water Dist. v. U.S.*, 708 F.3d 1340, 1354 (Fed. Cir. 2013) (citing *Thayer v. Cal. Dev. Co.*, 164 Cal.117, 125 (1912)); *see also* Cal. Wat. Code § 102 ("[T]he right to the use of water may be acquired by appropriation in the manner provided by law."). Specifically, "senior appropriators … are entitled to satisfy their reasonable needs, up to the full appropriation, before more junior appropriators are entitled to any water." *California Water Curtailment Cases,* 83 Cal.App.5th 164, 180 (2022) (noting junior users may be prevented from diverting to satisfy senior rights in times of supply shortage). Under California law "once rights to use water are acquired, they become vested property rights" that "cannot be ... taken by governmental action without due process and just compensation." *U.S. v. State Water Res. Control Bd.*, 182 Cal.App.3d 82, 101 (1986).

The panel mistakenly states that despite already holding a vested right as evidenced by a water rights license, United still "needed to have physically diverted water for its property right to vest" during the period of the claimed taking. *United*, 133 F.4th at 1058. This is wrong. California issues water rights licenses as confirmation of the right only after a water user has already met state law requirements to appropriate and apply water to a beneficial use. *See* Cal. Wat. Code § 1610 (a license "confirms the right" to appropriate the water). Issuance of a license is the final step in California's post-1914 statutory scheme regulating new water rights. *State Water Res. Control Bd.*, 182 Cal.App.3d at 102 (noting appropriative rights are confirmed upon issuance of a water rights license); *Eaton v. State Water Rights Bd.*, 171 Cal.App.2d 409, 415 (1959) ("The final procedural step in perfecting a water right is the issuance of a license").

Once vested, California law does not distinguish the scope of the right based on the water's location in-river versus within a diversion structure—a vested property right exists whether the water has been diverted at a given point in time or not. Cal. Wat. Code § 1627 (a license continues in perpetuity as long as the holder puts the water to beneficial use); Cal. Wat. Code § 1241 (requiring at least five years of nonuse and a finding by the state water board prior to reversion of a water right to unappropriated public water); *see also Arizona v. California*, 283 U.S. 423, 459 (1931) (noting diversion and use of water results in "a vested right to take and

divert from the same source, and to use and consume the same quantity of water annually forever ….”). These principles apply across the western states. *See, e.g.*, *County of Boulder v. Boulder & Weld Cty. Ditch Co.*, 367 P.3d 1179, 1186 (Colo. 2016) (“The doctrine of prior appropriation … forms the foundation of Colorado water law.”); *Hage v. U.S.*, 51 Fed. Cl. 570, 577 (2002) (noting under Nevada law appropriative rights are protected as property).

Despite this foundational principle of California water law, the panel suggests that for there to be a physical taking of the water right, an appropriator must divert water and then be required to give it back under the theory that at that point in time, they had yet to qualify as a vested right. *United*, 133 F.4th at 1058. Even ignoring the inconsistency with 175 years of California water law precedent, the internal inconsistency of the opinion is hard to overlook. After recognizing that it was “undisputed that United acquired a valid, appropriative property right”—specifically noting United held both a water license and permit—the panel perplexingly finds that the right had not vested because United had not “physically diverted water” at the time of the taking. *Id.* at 1053, 1056, 1058. That contradictory statement fails to acknowledge that United had already physically diverted the water and applied it to a beneficial use, necessary prerequisites to gaining an appropriative water right in the first place. The government

subsequently expropriated the water by ordering that it be sent to the fish ladder, thus depriving United of the usufructuary right to the priority of its use.

This Court must correct the panel's mischaracterization of the requirements for vesting an appropriative water right such that it qualifies as a property right that may be subject to a physical taking under the Fifth Amendment.

## II. THE PANEL OPINION CONFLICTS WITH PRECEDENT FROM THE SUPREME COURT AND FEDERAL CIRCUIT DISCUSSING PHYSICAL TAKINGS OF WATER RIGHTS.

This corrected understanding of California law undercuts the panel's conclusion that "the Supreme Court precedent and related cases United cites are consistent with our decision here." *United,* 133 F.4th at 1058. Neither the Supreme Court nor this Court's precedent supports the panel's novel requirement that the holder of a previously vested appropriative water right must physically divert water away from its source for a physical taking claim to accrue. There is no material difference between the rights granted under an appropriative water right based on the water's location in-river or in a diversion structure.

Based on its read of *International Paper Co. v. United States*, 282 U.S. 399 (1931), and *Casitas*, the panel states that United must allege "the government completely cut off its access to the water or caused it to return [a] volume of water it had previously diverted" in order to state a valid physical taking claim. *United,*

133 F.4th at 1057.[1] But that is inconsistent with the underlying principles articulated in those cases. In *International Paper*, the court stated that "[t]he petitioner's right was to the use of the water" and noted that International Paper was deprived of its property right by government action which prevented any diversion of the water. *Int'l Paper*, 228 U.S. at 405, 407. The inability to divert and use water was sufficient to support a physical taking claim.

In *Casitas*, an appropriative-right holder was required to devote a portion of its water to the operation of a fish ladder. 543 F.3d at 1282. The panel emphasizes that Casitas had already diverted the water and was subsequently required to return it through the fish ladder. *See United*, 133 F.4th at 1057. This ignores, however, *Casitas*'s focus on the permanent deprivation of the water right that was caused by the government's actions. "[T]he water that is diverted away from the [canal] is permanently gone. Casitas will never, at the end of any period of time, be able to get that water back." *Casitas*, 543 F.3d at 1296. The water is similarly "permanently gone" when an entity is prevented from diverting it in the first place.

Prohibiting diversion of a portion of its water is more than a burden, restriction in use, or temporary impairment of United's water right. Even partial impairment of a water right is sufficient to find a physical taking. *See Casitas*, 543

---

[1] *Amici* disagree that *Dugan v. Rank*, 372 U.S. 609 (1963), and *U.S. v. Gerlach Live Stock Co.*, 339 U.S. 725 (1950), are inapplicable, but focus here on cases addressing appropriative rights.

F.3d at 1292 ("[I]in the physical taking jurisprudence any impairment is sufficient."); *see also Washoe Co., Nev. v. U.S.*, 319 F.3d 1320, 1326 (Fed. Cir. 2003) (noting a physical taking can occur where the government "decreased the amount of water accessible"). To the extent the panel cites to *Seiber v. U.S.*, 364 F.3d 1356 (Fed. Cir. 2004) and *Boise Cascade Corp. v. U.S.*, 296 F.3d 1339 (Fed. Cir. 2002) to support its holding that this case presents a temporary restriction on natural resources, it ignores that *Casitas* expressly distinguished temporary use restriction from permanent deprivations. *Casitas*, 543 F.3d at 1296 (finding the regulatory taking analysis for temporary restrictions inapplicable given Casitas "will never … get that water back."). Government action preventing diversion and use of water under a vested appropriative water right is a permanent deprivation properly analyzed as a physical taking.

Under the panel opinion, government action decreasing the amount of water available for diversion would never qualify as a physical taking unless the water right holder first removed the water from the river, and then was forced to return it. There is no meaningful difference in the impact to a vested appropriative right from a requirement to leave water in-river versus a requirement to return it to the river after diversion. In either scenario, an appropriative-rights holder is deprived of their right because "[t]he water, and [the] right to use that water, is forever gone." *Casitas*, 543 F.3d at 1294 & n.15 (noting the "the license does not allow

Casitas to make up this amount in subsequent years.”). Whether required to divert and return water, run it through a fish ladder, or leave it in-river, United is permanently deprived of its vested right to use the water guaranteed under its licenses. That deprivation is a physical taking.

The Court should grant this petition to ensure consistency with existing Supreme Court and circuit precedent.

## CONCLUSION

The panel opinion, if left unrectified, will cause harm by requiring water right holders to relinquish their rights in favor of the prevailing public interest, under the pretext that government denial of access to water is not a violation of their rights. For these reasons, the Court should grant the petition.

Dated: July 7, 2025

BROWNSTEIN HYATT FARBER SCHRECK, LLP

By: ______________________________

Mary C. Loum
1415 L Street, Suite 800
Sacramento, CA 95814
Telephone: 916.594.9700
Email: mloum@bhfs.com

Scott S. Slater
1021 Anacapa Street, 2nd Floor
Santa Barbara, CA 93101-2711
Telephone: 805.895.3200
Email: sslater@bhfs.com

*Attorneys for Amici Curiae*

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT**

Pursuant to Federal Rule of Appellate Procedure 29, I certify that the foregoing Amici Curiae Brief complies with this Court's published filing requirements:

The foregoing brief complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it has been prepared using a proportionally-spaced typeface and includes 2,598 words, excluding those portions of the brief exempted by Federal Rule of Appellate Procedure, rules 5(c), 21(d), 27(d)(2), 32(f), or Federal Circuit Rule 32(b)(2). This certificate was prepared in reliance on the word count of the word-processing system used to prepare this brief using Microsoft Office Word 365 in 14-point Times New Roman font.

Dated: July 7, 2025

Mary Loum

Mary C. Loum