**No. 2023-1602**

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FEDERAL CIRCUIT**

UNITED WATER CONSERVATION DISTRICT,
Plaintiff-Appellant

v.

UNITED STATES,
Defendant-Appellee

Appeal from the United States Court of Federal Claims
in No. 1:22-cv-00542-CFL, Senior Judge Charles F. Lettow.

**CORRECTED**

# BRIEF OF AMICI CURIAE ASSOCIATION OF CALIFORNIA WATER AGENCIES, ET AL., IN SUPPORT OF PLAINTIFF-APPELLANT'S COMBINED PETITION FOR PANEL REHEARING AND REHEARING *EN BANC*

Brett A. Stroud, Esq.
The Law Offices of Young Wooldridge, LLP
10800 Stockdale Highway, Suite 202
Bakersfield, California 93311
Telephone: (661) 327-9661
Facsimile: (661) 663-4140
*Attorney for Amici Curiae Association of California Water Agencies, California Special Districts Association, Family Farm Alliance, Modesto Irrigation District, Rowland Water District, South San Joaquin Irrigation District, Santa Clarita Valley Water Agency, and Turlock Irrigation District*

July 2, 2025
Corrected July 11, 2025

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

| | |
|---|---|
| **Case Number** | 2023-1602 |
| **Short Case Caption** | United Water Conservation District v. United States |
| **Filing Party/Entity** | Association of California Water Agencies, et al. (Amici) |

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.
2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.
3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.
4. Please do not duplicate entries within Section 5.
5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 07/02/2025

Signature: /s/ Brett A. Stroud

Name: Brett A. Stroud

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☑ None/Not Applicable |
| Association of California Water Agencies | | |
| Family Farm Alliance | | |
| Modesto Irrigation District | | |
| Rowland Water District | | |
| South San Joaquin Irrigation District | | |
| Santa Clarita Valley Water Agency | | |
| Turlock Irrigation District | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐ Yes (file separate notice; see below) ☐ No ☑ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS


TABLE OF AUTHORITIES .......... v

STATEMENT OF INTEREST .......... 1

ARGUMENT .......... 3

- I. Appropriative Rights Are Crucial to California and the West .......... 3
- II. Appropriative Rights Are Essential to California Agriculture and to the Nation's Food Supply .......... 7
- III. The Panel Opinion Misunderstands California Law on Appropriative Rights .......... 8
  - A. Appropriative rights are vested, usufructuary property rights to the continued diversion and use of a given quantity of water. .......... 9
  - B. Preventing an appropriator's diversion of water is just as much a physical taking as redirecting already diverted water. .......... 10
- IV. Taking a Portion of an Appropriator's Water Is a Taking .......... 12

CONCLUSION .......... 14

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS .......... 15

# TABLE OF AUTHORITIES

## Cases

*California v. United States*, 438 U.S. 645 (1978) .................... 3
*Casitas Municipal Water District v. United States*, 543 F.3d 1276 (Fed. Cir. 2008) .................... 10, 11, 12
*Cedar Point Nursery v. Hassid*, 594 U.S. 139 (2021) .................... 9, 12
*City of Barstow v. Mojave Water Agency*, 23 Cal.4th 1224 (2000) .................... 10
*Dugan v. Rank*, 372 U.S. 609 (1963) .................... 9, 13
*El Dorado Irrigation Dist. v. State Water Res. Control Bd.*, 142 Cal.App.4th 937 (2006) .................... 3
*First Eng. Evangelical Lutheran Church of Glendale v. Los Angeles Cnty.*, 482 U.S. 304 (1987) .................... 13
*Hage v. United States*, 35 Fed.Cl. 147 (1996) .................... 3
*Int'l Paper Co. v. United States*, 282 U.S. 399 (1931) .................... 11
*Loretto v. Teleprompter Manhattan CATV Corporation*, 458 U.S. 419 (1982) .................... 13
*Meridian, Ltd., v. City and County of San Francisco*, 13 Cal.2d 424 (1939) .................... 4
*Murr v. Wisconsin*, 582 U.S. 383 (2017) .................... 12
*Pleasant Valley Canal Co. v. Borror*, 61 Cal.App.4th 742 (1998) .................... 10
*Rank v. Krug*, 142 F. Supp. 1 (S.D. Cal. 1956) .................... 9
*Thayer v. California Dev. Co.*, 164 Cal. 117 (1912) .................... 10
*United States v. Gerlach Live Stock Co.*, 339 U.S. 725 (1950) .................... 3, 9
*United States v. State Water Resources Control Bd.*, 182 Cal.App.3d 82 (1986) .................... 9
*Washoe Cnty. v. United States*, 319 F.3d 1320 (Fed. Cir. 2003) .................... 11

## Constitutional Provisions

Cal. Const. art. X, § 2 .................... 4, 10

## Treatises

J.W. Powell, Report on the Lands of the Arid Region of the United States (2d. Ed., 1878) .................... 7
Wells A. Hutchins, The California Law of Water Rights (1956) .................... 10

## Journal Articles

Richard Epstein, *Property Rights in Water, Spectrum, and Minerals*, 86 U. COLO. L. REV. 389 (2015) .................... 4

**Other Authorities**

California Department of Food and Agriculture, California Agricultural Statistics Review 2022-2023 .......... 8
California's Water Supply Strategy (2022) .......... 6
Press Release, Office of the California Governor, California is now the 4th largest economy in the world .......... 5
Statistical Abstract of the United States (1931) .......... 4
U.S. Census Bureau, 2020 Census: Table 2 .......... 4
Water Blueprint for the San Joaquin Valley, *California is facing a water scarcity that we can't ignore* .......... 6

## STATEMENT OF INTEREST

The Association of California Water Agencies is the largest statewide coalition of public water agencies in the United States, whose 460+ members are collectively responsible for approximately ninety percent of the water delivered to agricultural, domestic, and industrial beneficial uses in California.

The California Special Districts Association is a non-profit organization with membership consisting of over 1,000 special districts throughout California. It was formed to promote good governance and improve core local services through professional development, advocacy, and other services for all types of independent special districts. Independent special districts provide a wide variety of public services to urban, suburban, and rural communities throughout California, including providing water for all manner of beneficial uses.

The Family Farm Alliance is a grassroots, non-profit organization composed of family farmers, ranchers, irrigation districts, and allied industries in sixteen western states. The Alliance's mission is to ensure the availability of reliable and affordable irrigation water supplies to western farmers and ranchers, including supplies from federal water

projects. The Alliance has a long history of collaboration with constructive partners in all levels of government, with conservation and energy organizations, and with Native American tribal interests who seek real solutions to water resources challenges in the West.

Modesto Irrigation District, Rowland Water District, Santa Clarita Valley Water Agency, South San Joaquin Irrigation District, and Turlock Irrigation District are among the many ACWA members who depend on appropriative rights to supply their water users.

Appropriative water rights are essential to California's water rights framework. Amici and their members rely on appropriative rights to supply water to California's residents, industries, and agriculture. The Panel Opinion denies Fifth Amendment protection to appropriative rights based on misunderstandings of California law and would undermine the security of investments in water appropriations, which are critical to solving California's water supply problems.

Neither party or party's counsel authored this brief in whole or part or contributed money intended to fund its preparation or submission. No other individual or organization contributed money that was intended to

fund preparation or submission of this brief. Amici's authority to file this brief is its unopposed motion for leave. Federal Cir. R. 40(i).

## ARGUMENT

### I. Appropriative Rights Are Crucial to California and the West

The common law of water rights "developed where lands were amply watered by rainfall." *United States v. Gerlach Live Stock Co.*, 339 U.S. 725, 745 (1950). During the nation's westward expansion, experience demonstrated that this doctrine, which "had served well in the humid regions of the East … would not work in the arid lands of the West." *California v. United States*, 438 U.S. 645, 655 (1978). In the arid West—the seventeen states west of the 100th meridian—"water means the difference between farm and desert, ranch and wilderness, and even life and death." *Hage v. United States*, 35 Fed.Cl. 147, 172 (1996).

The western states developed water rights laws and customs adapted to the "peculiar necessities of their condition." *California*, 438 U.S. at 656. Their "most fundamental water problem" is "maldistribution of moisture in relation to human needs". *El Dorado Irrigation Dist. v. State Water Res. Control Bd.*, 142 Cal.App.4th 937, 945 (2006). Settlement of the West required diversion of water from streams for use elsewhere, often over great distances. This "fundamental need to invest

in long-term improvements in the form of ditches and other equipment" necessitated the development of the doctrine of appropriative rights. Richard Epstein, *Property Rights in Water, Spectrum, and Minerals*, 86 U. COLO. L. REV. 389, 402 (2015).

In 1928, the People of California amended their constitution to state California's fundamental water policy:

> "It is hereby declared that because of the conditions prevailing in this State the general welfare requires that the water resources of the State be put to beneficial use to the fullest extent of which they are capable, … in the interest of the people and for the public welfare."

Cal. Const. art. X, § 2. The purpose of the amendment was "to make it possible to marshal the water resources of the state and make them available for the constantly increasing needs of all of its people." *Meridian, Ltd., v. City and County of San Francisco*, 13 Cal.2d 424, 451 (1939). Those needs continue to increase. In 1930, immediately following the amendment, the population of California was 5,677,251. Statistical Abstract of the United States 9 (1931), https://www2.census.gov/prod2/statcomp/documents/1931-02.pdf. By 2020, it was 39,538,223—an almost seven-fold increase. U.S. Census Bureau, 2020 Census: Table 2, https://www2.census.gov/programs-surveys/decennial/2020/data/

apportionment/apportionment-2020-table02.pdf. That growth was made possible by large appropriations of water, including numerous state, federal, and local projects, all requiring massive investments of capital. Californians have invested tens of billions of dollars to develop infrastructure that conveys appropriated water—sometimes hundreds of miles—to large urban centers and productive agricultural regions. The state's largest urban centers rely on their investment-backed expectations in these water supplies to grow and remain socially and economically productive, and its farmers rely on their appropriated water supplies to produce food and fiber for California and for the nation. Through these investments, California has become the fourth-largest economy in the world. Press Release, Office of the California Governor, California is now the 4th largest economy in the world, https://www.gov.ca.gov/2025/04/23/california-is-now-the-4th-largest-economy-in-the-world/ (last visited July 2, 2025).

Those investments, funded through taxes, assessments, and water charges, are secured by California law's protection of an appropriator's **vested property right** in the continued appropriation and use of water. See *infra*, II.C. Reductions in supply impose serious burdens on water

suppliers, who often must incur large costs to develop substitute supplies and thus increase charges to their ratepayers. The Panel Opinion permits federal agencies to redirect water from those projects to uses favored by those agencies with no compensation, upsetting existing investment-backed expectations and disincentivizing further investment. California's current situation requires additional investments in new projects and improvements. California's Water Supply Strategy (2022), https://resources.ca.gov/-/media/CNRA-Website/Files/Initiatives/Water-Resilience/CA-Water-Supply-Strategy.pdf; Water Blueprint for the San Joaquin Valley, *California is facing a water scarcity that we can't ignore*, https://waterblueprintca.com/information/the-need/ (last visited July 2, 2025). Public water agencies need to invest billions of dollars in projects like the Delta Conveyance Project, Sites Reservoir, the Shasta Dam Enlargement, groundwater recharge, desalination, water recycling, and more. The public and private sectors need assurance that if the water they invest in capturing is repurposed by federal agencies the project will be compensated for that water.

The case should be reheard or reviewed *en banc* to ensure appropriative rights are protected and ensure the People of California can continue to live and thrive in the unique conditions of the arid West.

## II. Appropriative Rights Are Essential to California Agriculture and to the Nation's Food Supply

The agricultural potential of the western states was recognized from an early date. In his magisterial report on the conditions of the arid West, Major John Wesley Powell identified the problems and the promise of western agriculture:

> "All of these lands require either … to be redeemed from excessive humidity [or] to be redeemed from excessive aridity. When the excessively humid lands are redeemed, their fertility is almost inexhaustible, and the agricultural capacity of the United States will eventually be largely increased…. In like manner, … the arid lands, so far as they can be redeemed by irrigation, will perennially yield bountiful crops…."

J.W. Powell, Report on the Lands of the Arid Region of the United States at viii (2d. Ed., 1878), https://pubs.usgs.gov/unnumbered/70039240/report.pdf. Powell's predictions have proven true in California, which leads the nation in agriculture. In 2022-23, California farmers produced 18.2% of the nation's dairy and 10.4% of the nation's entire agricultural output (by cash farm receipts). California Department of Food and

Agriculture, California Agricultural Statistics Review 2022-2023 at 3 https://www.cdfa.ca.gov/Statistics/PDFs/2022-2023_california_agricultural_statistics_review.pdf. California leads the nation in dozens of crops and is the sole (99%+) producer of many—including garlic, grapes, olives, certain tree nuts (almonds, pistachios, walnuts), and certain stone fruits (cling peaches, plums). *Id.* at 9. California farmers achieve this prodigious output, essential to the nation's food-security, largely using appropriated water. This vital role of appropriated water in the nation's agriculture is another reason to grant rehearing or *en banc* review of the Panel Opinion, which jeopardizes the security of those appropriations. See *supra*, II.A.

## III. The Panel Opinion Misunderstands California Law on Appropriative Rights

The Panel Opinion's central holding is that NMFS's requirement that United bypass some of its water was not a physical taking but, at most, a regulatory taking. Panel Opinion at 12–13. That holding is based on two misunderstandings of California law: 1) that appropriative rights are not vested property rights and 2) that an appropriator only has property rights to water already diverted.

### A. Appropriative rights are vested, usufructuary property rights to the continued diversion and use of a given quantity of water.

The Panel Opinion distinguishes this case from two classic water rights takings cases—*Dugan v. Rank*, 372 U.S. 609 (1963) and *United States v. Gerlach Live Stock Co.*, 339 U.S. 725 (1950)—because those cases "involve[d] riparian rights, not appropriative rights."[1] Panel Opinion at 12. It is state law that defines the property interest in a takings case. *Cedar Point Nursery v. Hassid*, 594 U.S. 139, 155 (2021) ("[T]he property rights protected by the Takings Clause are creatures of state law."). California law is clear: it is "axiomatic that once rights to use water are acquired, they become vested property rights" and "cannot be infringed by others or taken by governmental action without due process and just compensation." *United States v. State Water Resources Control Bd.*, 182 Cal.App.3d 82, 101 (1986). The California Constitution "dictates the basic principles defining water rights" in California, and its text explicitly protects **both** riparian and appropriative rights. *City of*

[1] As argued in this brief, the distinction is irrelevant. But to be clear, *Dugan* involved appropriative rights as well as riparian rights. See *Rank v. Krug*, 142 F. Supp. 1, 115 (S.D. Cal. 1956).

*Barstow v. Mojave Water Agency*, 23 Cal.4th 1224, 1242 (2000), citing Cal. Const. art. X, § 2.

**B. Preventing an appropriator's diversion of water is just as much a physical taking as redirecting already diverted water.**

The Panel Opinion argues an appropriator "need[s] to have physically diverted water for its property right to vest and thus become subject to a physical taking." Panel Opinion at 12. That is contrary to California law, which has always acknowledged the appropriative right as itself a private property right. *Thayer v. California Dev. Co.*, 164 Cal. 117, 129 (1912); see generally Wells A. Hutchins, The California Law of Water Rights 120–22 (1956) [describing earliest cases]. That usufructuary right is a "vested" real property right. *Pleasant Valley Canal Co. v. Borror*, 61 Cal.App.4th 742, 752 (1998).

The Panel Opinion distinguished this case from *Casitas Municipal Water District v. United States*, 543 F.3d 1276 (Fed. Cir. 2008) ("*Casitas I*"), because in that case "after the water had been diverted … the government subsequently mandated a return of that water for a public purpose—fish preservation." Panel Opinion at 10, citing 543 F.3d at 1291–92. However, those facts were not necessary to the physical taking

analysis, which turned on whether the "active hand of the government was … at play" in taking the appropriator's right "to the use of the water." 543 F.3d at 1292. The Court likened that active role of the government to the facts of *International Paper Company v. United States*, 282 U.S. 399, 405–06 (1931), in which the government "cut off the water being taken" **before** it was diverted, which the Court found to be a taking. See also *Washoe Cnty. v. United States*, 319 F.3d 1320, 1326 (Fed. Cir. 2003) ("[C]ourts have recognized a physical taking where the government has … **decreased the amount of water accessible by the owner of the water rights**.") (emphasis added).

The government action in *International Paper Company* was the same as NMFS's action in this case: it "cut off the water being taken by [the right holder] and thereby increase[d] [another use of the water]." *Int'l Paper Co.*, 282 U.S. at 405–06. Redirecting a resource from the owner's use to one "deemed more useful" by the government is "not … any less a taking" than directly expropriating it. *Id.* at 408. In this case, the use "deemed more useful" by the government was "the preservation of the habitat of an endangered species," which *Casitas I* held amounted to a public use of the water. 543 F.3d at 1292.

NMFS exercised federal power to redirect water from United's uses to its preferred uses, usurping United's vested rights. Compensation for that redeployment of United's water is required by the core purpose of the takings clause: "to prevent the government from forcing some people alone to bear public burdens, which, in all fairness and justice, should be borne by the public as a whole." *Murr v. Wisconsin*, 582 U.S. 383, 393 (2017) (internal quotation marks omitted).

## IV. Taking a Portion of an Appropriator's Water Is a Taking

The Panel Opinion distinguished *International Paper Company* because in that case "the government completely cut off [the claimant's] access to the water." Panel Opinion at 10. This distinction is "insupportable as a matter of precedent and common sense." *Cedar Point Nursery v. Hassid*, 594 U.S. 139, 153 (2021). There is "no reason the law should analyze an abrogation of the right to [divert water for use] in one manner if it extends [to 100% of that water supply], but in an entirely different manner if it [extends to 99% of that water supply]." *Ibid.* Just as in *Casitas I*, it is immaterial that United was allowed to divert **some** of its water, because the specific water that United was required to bypass is now "gone forever." 543 F.3d at 1294 n.15.

This distinction also conflicts with Supreme Court precedent. In *Dugan*, the Court held that a taking of water rights occurs "if **any part** of respondents' claimed water rights were invaded." 372 U.S. at 623 (emphasis added). "Interference with or partial taking of water rights … might be analogized to interference or partial taking of air space over land." *Id.* at 625. Such partial takings are also analogous to the seminal case of *Loretto v. Teleprompter Manhattan CATV Corporation*, 458 U.S. 419 (1982). The *Loretto* Court held "a permanent physical occupation" of property, even as small as a cable box, constituted a per se taking because it "does not simply take a single 'strand' from the 'bundle' of property rights: it chops through the bundle, taking a slice of every strand."[2] 458 U.S. at 435. Likewise, if an appropriator is entitled to, for example, 1,000 acre-feet and the government takes 100 acre-feet for its own use, the government has not impaired his right to the 1,000 acre-feet by 10%. It has taken 100% of his right to **that** 100 acre-feet of water. For purposes of the critical interests of California appropriators described *supra*, I–II,

[2] An analogous rule applies to temporary physical takings, which are not simply impairments of a fee interest but can be conceptualized as complete takings of leasehold interests. See *First Eng. Evangelical Lutheran Church of Glendale v. Los Angeles Cnty.*, 482 U.S. 304, 318–19 (1987).

any reduction in water supply takes away a valuable property right, and individual appropriators and their rate-payers should not bear the cost of that reduction.

## CONCLUSION

The Panel Opinion has deep implications for the security of appropriative rights. The case should be reheard or considered *en banc*, so that the Court can apply the correct California law in its takings clause analysis and protect this fundamental necessity of life in California and throughout the West.

Dated: July 2, 2025
Corrected: July 11, 2025

The Law Offices of Young Wooldridge, LLP
By: */s/ Brett A. Stroud*
Brett A. Stroud
*Attorney for Amici Curiae Association of California Water Agencies, California Special Districts Association, Family Farm Alliance, Modesto Irrigation District, Rowland Water District, South San Joaquin Irrigation District, Santa Clarita Valley Water Agency, and Turlock Irrigation District*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 2023-1602

**Short Case Caption:** United Water Conservation District v. United States

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes 2,600 words.

☐ the filing has been prepared using a monospaced typeface and includes __________ lines of text.

☐ the filing contains __________ pages / __________ words / __________ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. __________).

Date: 07/11/2025

Signature: /s/ Brett A. Stroud

Name: Brett A. Stroud